# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| HEARTLAND MEDICAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17-CV-02873 JAR |
| ) | |
| ) | |
| EXPRESS SCRIPTS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Express Scripts, Inc.'s ("ESI") Motion to Dismiss Count IV of Heartland Medical, LLC's ("Heartland") Complaint. (Doc. 18.) Heartland has responded in opposition (Doc. 20), and ESI has replied (Doc. 22).

## BACKGROUND

Heartland alleges the following:[1] Heartland is an independent pharmacy that supplies over-the-counter diabetic testing supplies that it purchases from wholesalers. ESI is a "pharmacy benefits manager" that works with providers of employer-sponsored and third-party health insurance plans. ESI manages a network of pharmacies that provide prescription medication and medical supplies to plan members. ESI's network also includes its own pharmacy and distribution services.

Beginning in March 2015, Heartland contracted with ESI to provide testing supplies to customers in ESI's network. Heartland kept meticulous records, over and above what was required by ESI and federal law. In June 2016, ESI notified Heartland that it was conducting an investigative review of the pharmacy's transactions and demanded documentation regarding

Heartland's purchases of medications and supplies from wholesalers. Heartland provided the information as requested. Nevertheless, ESI rejected much of the documentation and asserted that Heartland had purchased inventory from non-authorized wholesalers. Although the contract's description of authorized wholesalers was ambiguous and adopted after the timeframe at issue in the investigation, Heartland agreed to provide additional records as requested by ESI. Once again, ESI rejected the documentation.

On February 10, 2017, ESI notified Heartland that it would terminate their contract two weeks later and that it would retain $1,310,413.18 in payments owed to Heartland on the ground that the payments were for claims involving unauthorized wholesalers. In the interim, ESI sent letters to Heartland's customers notifying them of the impending termination and informing them that ESI's own mail-order pharmacy was available to service their on-going needs.

Heartland filed suit in December 2017, alleging breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, tortious interference with business relations, and declaratory judgment. (Doc. 1 at 24-31.) ESI now moves to dismiss Heartland's tortious-interference claim, arguing that it is barred by the economic loss doctrine. (Doc. 19.) Heartland responds that the economic loss doctrine does not apply to tortious interference claims and that, even if it does, ESI's interference represents misconduct separate and apart from its breach of the parties' contract. (Doc. 20.)

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 768 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[1] All factual allegations are taken from Heartland's Complaint. (Doc. 1.)

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"The economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Self v. Equilon Enterprises, LLC*, No. 4:00CV1903TA, 2005 WL 3763533, at *8 (E.D. Mo. Mar. 30, 2005). Diversity cases such as this one are governed by the laws of the forum state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). "Missouri prohibits a cause of action in tort where the losses are purely economic[; . . . r]ecovery in tort is limited to cases in which there has been 'personal injury, or property damage either to property other than the property sold, or to the property sold when it [i]s rendered useless by some violent occurrence.'" *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995) (quoting *R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 828-29 (8th Cir. 1983)).

However, courts have been hesitant to apply the economic loss doctrine to claims of tortious interference with business relations, especially when the interference can be distinguished from the parties' contractual obligations. *See Hogan Logistics, Inc. v. Davis Transfer Co., Inc.*, No. 4:16-CV-1541 (CEJ), 2017 WL 1508603, at *5 (E.D. Mo. Apr. 27, 2017) (citing *Hanover Ins. Co. v. Hermosa Const. Grp., LLC*, 57 F. Supp. 3d 1389, 1396 (N.D. Ga. 2014) (holding that claims based on an independent duty not to interfere with another's business are outside the contractual relationship and not barred by the economic loss doctrine); *see also Zoltek Corp. v. Structural Polymer Grp., Ltd.*, No. 4:08-CV-460 (CEJ), 2008 WL 4921611, at *4 (E.D. Mo. Nov. 13, 2008), *aff'd sub nom. Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893 (8th Cir. 2010) (declining to apply the economic loss doctrine to claims that the defendant's interference was "collateral to the parties' contract) (citing *Adbar Co. v. PCCA Missouri, LLC,* No. 4:06–CV–1689JCH, 2008 WL68858 (E.D. Mo. Jan. 4, 2008) (finding claims for unfair

competition and tortious interference arose from duties arising outside the parties' lease agreement and thus were not barred by the economic loss doctrine).

In addition, district courts in Missouri have noted that the economic loss doctrine originated in cases arising under the Uniform Commercial Code ("UCC"), making it inapplicable to contracts for services like the one at issue in this case. *Mea Fin. Enterprises, LLC v. Fiserv Sols., Inc.*, No. 13-05041-CV-SW-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013); *see also Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998, 1002 (E.D. Mo. 2014) (quoting *Self*, 2005 WL 3763533) ("The doctrine was judicially created to protect the integrity of the UCC bargaining process; it prevents tort law from altering the allocation of costs and risks negotiated by the parties."). Indeed, the Eighth Circuit has recognized that the origins of the economic loss doctrine are rooted in the UCC. *See Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 909 (8th Cir. 2013) (quoting *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 885 (8th Cir. 2000)) ("allowing the buyer to resurrect time-barred warranty claims in 'tort would be *precisely the kind of subversion of the U.C.C. that the economic loss doctrine is intended to prevent*.'") (emphasis added).

## ANALYSIS

The Court begins by noting that Heartland appears to describe a separate and distinct act by ESI—writing to Heartland's ESI-network customers in the wake of its termination of the contract to recruit them to ESI's own pharmacy—which violated an independent duty outside the contract. In that regard, at least, the Court agrees with the numerous cases Plaintiff cites that the economic loss doctrine would not bar recovery for injuries caused by such conduct. However, the Court concludes that Heartland does not identify any injury caused by ESI's letter which is separate and distinct from the injury caused by the allegedly wrongful termination of its contract by ESI; Heartland's loss of access to these customers was a necessary result of ESI's termination

of the contract. The alleged injury caused by the tortious interference was actually caused by the contract termination—once ESI terminated its contract with Heartland, there was no future business relationship with which ESI could interfere. Thus, the loss of access to ESI-network customers was a result of terminating the contract, not the letters. The Court therefore concludes that Heartland's tortious interference claim seeks to recover damages that are contractual in nature and is barred by the economic loss doctrine. *Self*, 2005 WL 3763533, at *8.

This conclusion is in accord with other decisions from the Eastern District, most notably *HHCS Pharm., Inc. v. Express Scripts, Inc.*, No. 4:16-CV-1169 (CEJ), 2016 WL 7324968, at *5 (E.D. Mo. Dec. 16, 2016), and *Cystic Fibrosis Pharm., Inc. v. Express Scripts, Inc.*, No. 4:16-CV-1167 (CEJ), 2016 WL 7242163, at *5 (E.D. Mo. Dec. 15, 2016). In those cases, both similar to this one, independent pharmacies sued ESI for wrongful termination and alleged tortious interference with business relationship claims. *HHCS Pharm.*, 2016 WL 7324968, at *5; *Cystic Fibrosis Pharm*, 2016 WL 7242163, at *5. In both suits, the court rejected those tort claims as barred by the economic loss doctrine, finding that the plaintiff's injuries all stemmed from the termination of their contracts with ESI. *HHCS Pharm.*, 2016 WL 7324968, at *5; *Cystic Fibrosis Pharm*, 2016 WL 7242163, at *5. While it is true that neither *HHCS Pharm.* nor *Cystic Fibrosis Pharm.* involved an invitation to former customers to join ESI's in-house pharmacy, the determination that terminating access to ESI-network patients was a contractual injury bolsters the Court's conclusion in this case.

**CONCLUSION**

The Court concludes that Heartland failed to demonstrate that ESI's letter to Heartland's ESI-network customers caused separate, distinct, additional injury. Therefore, the Court finds that all of Heartland's alleged injuries are contractual in nature and that its claim for tortious

interference with business relations is barred by the economic loss doctrine. As such, Heartland cannot state a facially plausible tortious-interference claim. *Iqbal*, 556 U.S. at 768.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Express Scripts, Inc.'s Motion to Dismiss Count IV of Plaintiff Heartland Medical, LLC's Complaint (Doc. 18), is **GRANTED**.

Dated this 5th day of September, 2018.

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**